IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-553-D

AMCO INSURANCE COMPANY, )
and DEPOSITORS INSURANCE )
COMPANY, )
 )
                Plaintiffs, )
 )    **ORDER**
       v. )
 )
VAN LANINGHAM & ASSOCIATES, )
PLLC, and ROBERT BRADLEY )
VAN LANINGHAM, )
 )
                Defendants. )

On October 20, 2020, AMCO Insurance Company and Depositors Insurance Company (collectively, "Nationwide" or "plaintiffs") filed suit seeking a declaratory judgment that Nationwide has no duty to defend or indemnify Robert Bradley Van Laningham ("Van Laningham") and Van Laningham and Associates, PLLC, doing business as Bradley Law Group ("Bradley Law") (collectively, "defendants") in an underlying lawsuit that arose in the United States District Court for the Middle District of North Carolina [D.E. 1]. On January 8, 2021, Van Laningham and Bradley Law answered the complaint and counterclaimed for breach of contract and a declaratory judgment that Nationwide must defend and indemnify them [D.E. 12]. On January 14, 2022, Nationwide moved for summary judgment and filed a memorandum, a statement of material facts, and exhibits in support [D.E. 20–23]. On February 4, 2022, defendants responded in opposition [D.E. 25–26]. On February 18, 2022, Nationwide replied [D.E. 27]. As explained below, the court grants Nationwide's motion for summary judgment.

I.

On September 30, 2019, William Parker Garey and five other plaintiffs filed a second

amended complaint in the underlying lawsuit in the United States District Court for the Middle District of North Carolina. See Garey Compl. [D.E. 1-4]; Defs.' Stmt. Mat. Fact ("SMF") [D.E. 22] ¶¶ 1–2; Pls.' Resp. Stmt. Mat. Facts ("Resp. SMF") [D.E. 26] ¶¶ 1–2. The plaintiffs named numerous parties as defendants, including Van Laningham and Bradley Law. See Garey Compl. ¶¶ 15–16; SMF ¶ 1; Resp. SMF ¶ 1. Plaintiffs' putative class action alleged violations of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 et seq. ("DPPA"). See Garey Compl. ¶¶ 147–58.

In North Carolina, when law enforcement officers investigate reported traffic accidents, they report their investigations on a standard form called a "DMV-349." See Garey Compl. ¶¶ 36–38. Reports created on a DMV-349 include the personal information of the drivers involved, including their names, dates of birth, addresses, and driver's license numbers. See id. ¶¶ 39–40, 51. Plaintiffs in the Garey lawsuit alleged they each were involved in a traffic accident and the investigating law enforcement officer created a DMV-349. See id. ¶¶ 42–53. All the plaintiffs but one alleged that Van Laningham and Bradley Law "knowingly obtained the DMV-349s as described above with the intent of obtaining names and addresses of wreck victims for the purpose of using those names and addresses to send targeted direct mail solicitation letters for the purpose of marketing [their] legal services." Garey Compl. ¶¶ 54, 56–60, 62–63, 72; SMF ¶¶ 3–4; Resp. SMF ¶¶ 3–4. Alternatively, the Garey plaintiffs alleged that even if Van Laningham and Bradley Law did not obtain the DMV-349 reports, they obtained the personal information in the reports through a third party that did obtain the reports. See Garey Compl. ¶ 61; SMF ¶ 3; Resp. SMF ¶ 3.

Van Laningham and Bradley Law allegedly used the personal information in the DMV-349 reports to mail to the plaintiffs marketing materials for legal services. See Garey Compl. ¶¶ 66, 68–71, 110; SMF ¶¶ 2–4; Resp. SMF ¶¶ 2–4. The marketing materials included the statement, "This is an advertisement for legal services." Garey Compl. ¶ 122. The Garey plaintiffs alleged that this conduct constituted the knowing acquisition of personal information from a motor vehicle record for a purpose the DPPA does not authorize. See id. ¶¶ 115–27. According to the Garey plaintiffs,

2

this unlawful acquisition and disclosure invaded their privacy. See id. ¶¶ 125, 127. Plaintiffs sought liquidated damages and injunctive relief. See Garey Compl. [D.E. 1-4] 66–67; SMF ¶¶ 6–7; Resp. SMF ¶¶ 6–7.

On July 23, 2020, the United States District Court for the Middle District of North Carolina denied the Garey plaintiffs' motion for class certification. See Garey v. James S. Farrin, P.C., No. 1:16CV542, 2020 WL 4227551 (M.D.N.C. July 23, 2020) (unpublished); see also SMF ¶ 4; Resp. SMF ¶ 4. On January 22, 2021, the court granted the Garey defendants' motions for summary judgment, concluding their conduct did not violate the DPPA. See Garey v. James S. Farrin, P.C., 514 F. Supp. 3d 784 (M.D.N.C. 2021); see also SMF ¶ 8; Resp. SMF ¶ 8. On June 3, 2022, the Fourth Circuit affirmed. See Garey v. James S. Farrin, P.C., 35 F.4th 917 (4th Cir. 2022). Nationwide, which insures Bradley Law, defended Van Laningham and Bradley Law in the Garey lawsuit pursuant to a reservation of rights. See SMF ¶¶ 8, 24; Resp. SMF ¶¶ 8, 24; [D.E. 1-5]; [D.E. 23-2].

Nationwide argues the insurance policies it issued to Van Laningham and Bradley Law do not require it to defend or indemnify them in the Garey action and filed this action seeking a declaratory judgment to that effect. AMCO Insurance Company issued a primary policy to Bradley Law for the period June 7, 2011, to June 7, 2012. See SMF ¶ 9; Resp. SMF ¶ 9; [D.E. 23-3]. Depositors Insurance Company issued primary policies to Bradley Law for the period November 19, 2013, to November 19, 2016. See SMF ¶ 9; Resp. SMF ¶ 9; [D.E. 23-5, 23-7, 23-9]. Both also issued umbrella policies to Bradley Law. The parties agree that the relevant coverages and exclusions in the umbrella policies are the same as in the primary policies. See SMF ¶¶ 21–23; Resp. ¶¶ 21–23.

The Nationwide policies include Coverage A and Coverage B, and both are subject to

3

exclusions.[1] Except as discussed, the policies all contain the same relevant provisions.[2] Compare [D.E. 23-3], with [D.E. 23-5], and [D.E. 23-7], and [D.E. 23-9]. Under Coverage A, Nationwide insured Bradley Law against claims for bodily injury and property damage. See [D.E. 23-3] 67. Coverage A applies when "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period. Id. The policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 84. The policies define "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Id. at 87.

Under Coverage B, Nationwide insured Bradley Law against sums "the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Id. at 74. A "personal and advertising injury" is an

> injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

---

[1] The parties agree on which provisions and exclusions are potentially relevant. See SMF ¶¶ 9–20; Resp. SMF ¶¶ 9–20.

[2] Thus, this order primarily cites and quotes from only one policy.

4

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

Id. at 86.

Coverage B is subject to several exclusions. The exclusions include the "criminal act" exclusion, which removes from Coverage B personal and advertising injuries "[a]rising out of a criminal act committed by or at the direction of any insured or a criminal act committed by another for which any insured is held to be vicariously liable." Id. at 75. The exclusion for "recording and distribution of material in violation of law" states that Coverage B does not apply to personal and advertising injuries "[a]rising directly or indirectly out of any action or omission that violates or is alleged to violate:

  (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

  (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

  (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

  (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA or their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Id. at 76.

Both Coverage A and Coverage B are subject to an exclusion for the "violation of consumer protection statutes." That exclusion is materially indistinguishable from the "recording and distribution of material in violation of law" exclusion to Coverage B, except that its catch-all provision in subpart four is limited to the "electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information." Id. at 108.

## II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court

5

determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

This court has subject-matter jurisdiction based on diversity. See 28 U.S.C. § 1332; cf. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950). Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

Because this dispute requires interpreting a North Carolina insurance contract, the court

6

applies North Carolina substantive law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[3] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

The coverage contracted for in an insurance policy determines the insurer's duty to defend its insured. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 303–07, 524 S.E.2d 558, 564–68 (2000); Mastrom, Inc. v. Cont'l Cas. Co., 78 N.C. App. 483, 484, 337 S.E.2d 162, 163 (1985); see also Owners Ins. Co. v. MM Shivah LLC, No. 5:20-CV-21-D, 2022 WL 668382, at *2–4 (E.D.N.C. Mar. 4, 2022) (unpublished); Peerless Ins. Co. v. Strother, 765 F. Supp. 866, 869 (E.D.N.C. 1990). North Carolina law employs the "comparison test," comparing the insurance policy with the allegations in the complaint. See Harleysville Mut. Ins. Co. v. Buzz Off

---

[3] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

7

Insect Shield, L.L.C., 364 N.C. 1, 6–7, 692 S.E.2d 605, 610–11 (2010); see, e.g., Owners Ins. Co., 2022 WL 668382, at *2; Peerless Ins. Co., 765 F. Supp. at 869. "If the facts, as alleged in the complaint, could support liability under the policy, then a duty to defend arises on the insurer's part." Peerless Ins. Co., 765 F. Supp. at 869. In determining whether a duty to defend exists, a court focuses on the facts alleged in the underlying action and not on how the parties characterize the claims. See Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co., 141 N.C. App. 127, 128, 539 S.E.2d 348, 350 (2000); see also State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 255 (4th Cir. 2003).

"An insurer's duty to defend arises when the claim against the insured sets forth facts representing a risk covered by the terms of the policy. The duty to defend is much broader than the duty to indemnify, and may attach even in an action in which no damages are ultimately awarded." Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 124 N.C. App. 232, 242, 477 S.E.2d 59, 66 (1996) (citations omitted), modified on other grounds on reh'g, 127 N.C. App. 729, 493 S.E.2d 658 (1997) (per curiam); see Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691 & n.2, 340 S.E.2d 374, 377 & n.2 (1986); see also Peerless Ins. Co., 765 F. Supp. at 869. "[E]ven a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy." Harleysville Mut. Ins. Co., 364 N.C. at 7, 692 S.E.2d at 611; see Hartford Cas. Ins. Co. v. Greve, No. 3:17CV183-GCM, 2017 WL 5557669, at *3 (W.D.N.C. Nov. 17, 2017) (unpublished), aff'd sub nom. Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA, 742 F. App'x 738 (4th Cir. 2018) (per curiam) (unpublished). "Of course, allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insure[r]." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. The insurer has a duty to defend unless the facts as alleged "are not even arguably covered by the policy." Id. at 692, 340 S.E.2d at 378.

8

Where the relevant facts are not disputed, construing the policy is an issue of law. See Parker v. State Cap. Life Ins. Co., 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963). "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009) (quotation omitted); see Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting "an insurance policy, the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties." Fulford v. Jenkins, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (quotation omitted); see McDowell Motor Co. v. N.Y. Underwriters Ins. Co., 233 N.C. 251, 254, 63 S.E.2d 538, 540–41 (1951). A court must construe an insurance contract as a reasonable person in the position of the insured would have understood the insurance contract. See Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004); Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975); Trophy Tracks, Inc., 195 N.C. App. at 738, 673 S.E.2d at 790.

The insurance company selected the words in the insurance policy, and a court must resolve "any ambiguity or uncertainty as to their meaning . . . in favor of the policyholder, or the beneficiary, and against the company." Wachovia Bank & Tr. Co., 276 N.C. at 354, 172 S.E.2d at 522; see Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967); Mills v. State Life & Health Ins. Co., 261 N.C. 546, 553, 135 S.E.2d 586, 590 (1964); Jones v. Pa. Cas. Co., 140 N.C. 262, 264, 52 S.E. 578, 579 (1905).

Where a policy defines a term, that definition controls. See Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). Where a policy does not define a term, a court gives "nontechnical words . . . their meaning in ordinary speech, unless the context clearly indicates another meaning was

9

intended." Woods, 295 N.C. at 506, 246 S.E.2d at 777; see Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); Grant v. Emmco Ins. Co., 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). Moreover, courts give a term in an insurance policy the same meaning throughout the various coverages unless the policy clearly expresses an intent to give different meanings to the term within the different coverages in the same policy. See Grant, 295 N.C. at 54, 243 S.E.2d at 904; Fieldcrest Cannon, Inc., 124 N.C. App. at 244, 477 S.E.2d at 67.

The insured bears the burden to prove coverage. See Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326, 328, 150 S.E.2d 496, 497 (1966); N.C. Farm Bureau Mut. Ins. Co. v. Sadler, 365 N.C. 178, 182, 711 S.E.2d 114, 116–17 (2011); Metric Constructors, Inc. v. Indus. Risk Insurers, 102 N.C. App. 59, 61–62, 401 S.E.2d 126, 128, aff'd, 330 N.C. 439, 410 S.E.2d 392 (1991) (per curiam). "If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." McAbee, 268 N.C. at 328, 150 S.E.2d at 497.

Where there is a "separation of insureds" provision, a court must apply each exclusion separately with respect to each insured. See Universal Ins. Co. v. Burton Farm Dev. Co., LLC, 216 N.C. App. 469, 476, 718 S.E.2d 665, 670 (2011); [D.E. 23-3] 84. Exclusions are not favored, and courts strictly construe exclusions against the insurer within the reasonable interpretation of the policy language. See Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967); Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co., 145 N.C. App. 278, 281, 550 S.E.2d 271, 273 (2001). "[E]xclusions from coverage are construed strictly so as to provide coverage which would otherwise be afforded by the policy." Marriott Fin. Servs., Inc., 288 N.C. at 144, 217 S.E.2d at 565; see Wachovia Bank & Tr. Co., 276 N.C. at 355, 172 S.E.2d at 522–23.

III.

Initially, Van Laningham and Bradley Law bear the burden of showing coverage. See McAbee, 268 N.C. at 328, 150 S.E.2d at 497. As for Coverage A, the Garey lawsuit does not

10

contain allegations of bodily injury or property damage. See Garey Compl. In opposition, Van Laningham and Bradley Law cite the Garey plaintiffs' "allegations of actual damages sustained by each of the underlying Plaintiffs because they had to 'retrieve the mailings addressed to them' and had their 'privacy invaded by disclosure of his or her name or address in connection with a potential need for legal services.'" [D.E. 25] 20 (quoting Garey Compl. ¶ 126). But retrieving mail and suffering an invasion of privacy are not bodily injuries, sicknesses, or diseases and do not involve damage to or loss of the use of property. See [D.E. 23-3] 84, 87 (defining "bodily injury" and "property damage" under Coverage A). Thus, Coverage A does not require Nationwide to defend Van Laningham and Bradley Law.

As for whether the Garey lawsuit alleges a "personal and advertising injury" under Coverage B, the policies define "personal and advertising injury" using a list of enumerated torts. When an insurance policy has a personal injury provision "that cover[s] enumerated torts," the policy provides coverage "only if plaintiffs have alleged or recovered for one of those enumerated torts." Russ v. Great Am. Ins. Cos., 121 N.C. App. 185, 191, 464 S.E.2d 723, 727 (1995); see Wake Stone Corp. v. Aetna Cas. & Sur. Co., 995 F. Supp. 612, 615 (E.D.N.C. 1998). Violating the DPPA is not expressly enumerated in the definition of "personal and advertising injury." However, the fifth enumerated tort defines "personal and advertising injury" to include the "oral or written publication, in any manner, of material that violates a person's right of privacy." [D.E. 23-3] 86.

The Garey lawsuit encompasses alleged violations of a privacy right. The phrase "a person's right of privacy" in the policies does not distinguish between statutory and common law rights or federal and state rights. By its plain terms, the phrase is broad. The DPPA's purpose is to "protect[] a right to privacy" in motor vehicle records. Maracich v. Spears, 570 U.S. 48, 60–61 (2013); see Garey, 35 F.4th at 922 (holding the plaintiffs in Garey had standing to seek damages because they "alleged a legally cognizable privacy injury"); Sentinel Ins. Co. Ltd. v. Farrin P.C., No. 1:17CV211, 2020 WL 3469836, at *2 & n.6 (M.D.N.C. June 25, 2020) (unpublished). Thus, the Garey lawsuit

11

alleges violations of the Garey plaintiffs' federal statutory privacy rights under the DPPA and alleges defendants "violate[d] a person's right of privacy." [D.E. 23-3] 86.[4]

For Coverage B to apply, the privacy right violation must stem from the "publication, in any manner, of material." Id. The Garey second amended complaint summarizes the privacy allegations: "As a proximate result of Defendants' unlawful conduct as described above, each Plaintiff-Owner sustained actual damages by having his or her privacy invaded by Defendants' knowingly obtaining his or her name and address from a motor vehicle record for an impermissible purpose in violation of law and in having his or her information knowingly obtained, disclosed, and used for marketing purposes without his or her consent." Garey Compl. ¶ 127. Although the Garey plaintiffs framed this summary in terms of "actual damages," the Garey plaintiffs' prayer for relief focused on claims for liquidated damages stemming solely from the defendants obtaining information from DMV-349 records for an unauthorized purpose under the DPPA. See SMF ¶ 6; Resp. SMF ¶ 6; Garey Compl. at 66 (Prayer for Relief, ¶ 3). Thus, the alleged privacy violation for which the Garey plaintiffs sought liquidated damages stemmed from defendants unlawfully obtaining the plaintiffs' personal information.

The policies do not define the word "publication." A "publication" is "[t]he action of making something publicly known; public notification or announcement," or "[t]he issuing of a book, newspaper, magazine, or other printed matter for public sale or distribution." Publication, Oxford

---

[4] Nationwide relies on Hartford Casualty Insurance Company v. Ted A. Greve & Associates, P.A., 742 F. App'x 738 (4th Cir. 2018) (per curiam) (unpublished), to argue that the Garey lawsuit does not involve the violation of a privacy right under North Carolina law. See [D.E. 21] 19–20; [D.E. 27] 7–8. Although the Fourth Circuit did discuss North Carolina invasion-of-privacy torts in Greve, the parties in Greve agreed that "the underlying actions allege injuries that arise out of the violation of a privacy right created by a federal statute." Greve, 724 F. App'x at 741. In Greve, the Fourth Circuit discussed whether the underlying actions involved a state-law invasion of privacy that would place the actions within an exception to the privacy exclusion that applied to the alleged DPPA violations. See id. Here, the court need not focus on North Carolina privacy torts because a violation of the DPPA is a violation of a federal statutory privacy right.

12

English Dictionary (online ed.); see N.C. State Bar v. Culbertson, 177 N.C. App. 89, 95, 627 S.E.2d 644, 649 (2006) (defining "publish" to mean "to make generally known, to make public announcement of, to place before the public, to produce for release for publication, to issue the work (of an author), to put out an edition, or to have one's work accepted for publication" (quoting Webster's New Collegiate Dictionary 952 (9th ed. 1991)). "Publication" also can mean "the act or process of publishing." Publication, Merriam-Webster's Dictionary (online ed.). "Publish," in turn, means "to make generally known," "to disseminate to the public," "to produce or release for distribution specifically : PRINT." Publish, Merriam-Webster's Dictionary (online ed.). Finally, Black's Law Dictionary defines "publish" to mean "[t]o distribute copies (of a work) to the public." Publish, Black's Law Dictionary (11th ed. 2019).

Because the injuries alleged in Garey focused on obtaining information for a purpose that the DPPA did not authorize, the injuries did not involve the "publication" of material. In a duty-to-defend action, "the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury." Harleysville, 364 N.C. at 7, 692 S.E.2d at 611; see Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., 254 N.C. App. 741, 745, 802 S.E.2d 173, 176 (2017). Put differently, the duty to defend arises "[w]hen the pleadings state facts demonstrating that the alleged injury is covered by the policy." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691, 340 S.E.2d at 377. Because the Garey plaintiffs' alleged injuries arose from defendants allegedly obtaining information in violation of the DPPA, rather than using or disclosing that information, the alleged injuries did not stem from the publication of material. Accordingly, even though the Garey lawsuit involves an alleged invasion of privacy, the Garey plaintiffs alleged that their injuries stemmed from defendants' allegedly obtaining information in violation of the DPPA, not their publishing (i.e., their "use" or "disclosure") of it. Thus, Coverage B does not apply and Nationwide has no duty to defend Van Laningham and Bradley Law.

13

Alternatively, even if the privacy right violation in Garey constitutes a "publication, in any manner, of material" because Van Laningham and Bradley Law sent advertising materials to the Garey plaintiffs, Nationwide has demonstrated that several exclusions preclude coverage. See McAbee, 268 N.C. at 328, 150 S.E.2d at 497. The "criminal act" exclusion removes from Coverage B personal and advertising injuries "[a]rising out of a criminal act committed by or at the direction of any insured or a criminal act committed by another for which any insured is held to be vicariously liable." [D.E. 23-3] 75. The DPPA has a civil cause of action and a criminal penalty provision. See 18 U.S.C. §§ 2723–2724. When a person knowingly violates the DPPA, both potentially apply. See id. Thus, "a knowing violation of the DPPA, which gives rise to a civil cause of action, is also a violation of the penal criminal provision." N.C. Farm Bureau Mut. Ins. Co. v. Lanier Law Group, P.A., 277 N.C. App. 605, 612–13, 861 S.E.2d 565, 570 (2021), petition for discretionary review docketed, No. 235P21 (N.C. July 6, 2021).[5] Because the Garey lawsuit alleges civil violations of the DPPA, the factual allegations also would constitute a criminal violation. See id. at 612–13, 861 S.E.2d at 570. As the North Carolina Court of Appeals concluded in Lanier Law Group, the allegations in Garey encompass "injury arising out of the . . . violation of a penal statute and that violation is excluded from coverage under the plain terms" of the "criminal act" exclusion at issue in that case. See id. at 612–13, 861 S.E.2d at 570. So too here. Because the Garey lawsuit falls within the "criminal act" exclusion to Coverage B, Nationwide does not have a duty to defend Van Laningham and Bradley Law. See id. at 612–13, 861 S.E.2d at 570.

---

[5] Defendants object to the court relying on Lanier Law Group because a petition for discretionary review is pending before the North Carolina Supreme Court. See [D.E. 25] 15. However, unless and until the Supreme Court of North Carolina grants review and reverses, Lanier Law Group remains a published decision of the North Carolina Court of Appeals. Cf. Toloczko, 728 F.3d at 398. Moreover, defendants have not presented "persuasive data that the [Supreme Court of North Carolina] would decide differently." Id. Thus, this court must follow the North Carolina Court of Appeals's resolution in Lanier Law Group of a coverage dispute arising from Garey and involving a similar policy exclusion for criminal acts. See Toloczko, 728 F.3d at 398.

14

Alternatively, subpart four of the "recording and distribution of material in violation of law" exclusion also bars coverage. Subpart four excludes from Coverage B "any action or omission that violates or is alleged to violate ... [a]ny federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information." [D.E. 23-3] 76. In Garey, the plaintiffs alleged that Van Laningham and Bradley Law obtained the plaintiffs' personal information for a purpose that the DPPA did not permit. See 18 U.S.C. § 2724(a); Garey Compl. Those allegations fall within this exclusion, which bars coverage. Cf. Main St. Am. Assurance Co. v. Crumley Roberts, LLP, No. 1:19CV220, 2021 WL 1195804, at *2 (M.D.N.C. Mar. 30, 2021) (unpublished); Van Laningham v. Allied Ins., No. 1:16CV948, 2020 WL 3470254, at *2–3 (M.D.N.C. June 25, 2020) (unpublished); Peerless Ins. Co. v. Law Offices of Jason E. Taylor P.C., No. 5:19-CV-00126-KDB-DSC, 2020 WL 4370941, at *3–4 (W.D.N.C. July 8, 2020) (unpublished), report and recommendation adopted, 2020 WL 4369446 (W.D.N.C. July 30, 2020) (unpublished); Hartford Cas. Ins. Co. v. Gelshenen, 387 F. Supp. 3d 634, 641–42 (W.D.N.C. 2019), aff'd sub nom. Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP, 801 F. App'x 915 (4th Cir. 2020) (per curiam) (unpublished); Greve, 2017 WL 5557669, at *4–5.

In opposition, Van Laningham and Bradley Law make two arguments. First, they argue that because the Garey plaintiffs used the words "obtain" and "use" (which are the operative words in 18 U.S.C. § 2724(a)) in their second amended complaint and those specific words do not appear in the exclusion, the exclusion does not apply. See [D.E. 25] 18–19. But obtaining and collecting are essentially the same, and many of the other actions listed in the provision are types of use. Moreover, subpart four in the exclusion refers to actions that allegedly violate a statute that "addresses, prohibits, or limits" these actions. The DPPA "addresses, prohibits, or limits" the "printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or

15

distribution of material or information" if it is done for a purpose the DPPA does not permit. [D.E. 23-3] 76; see 18 U.S.C. § 2724(a). Thus, this argument fails. See Nationwide Mut. Ins. Co. v. Law Offices of Christopher T. May, P.C., No. 3:20-cv-00577-FDW-DCK, 2022 WL 1698639, at *6–7 (W.D.N.C. May 26, 2022) (unpublished) [hereinafter May]; Nationwide Mut. Fire Ins. Co. v. Nagle & Assocs., P.A., No. 3:20-cv-00578-FDW-DSC, 2022 WL 628519, at *6–7 (W.D.N.C. Mar. 3, 2022) [hereinafter Nagle], appeal docketed, No. 22-1395 (4th Cir. Apr. 12, 2022); Van Laningham, 2020 WL 3470254, at *2–3.

Second, defendants argue that the "violation of consumer protection statutes" exclusion that was added to the policies as an endorsement supersedes the "recording and distribution of material in violation of law" exclusion. See [D.E. 25] 17–18. The "violation of consumer protection statutes" exclusion applies to both Coverage A and Coverage B and is materially identical to the "recording and distribution of material in violation of law" exclusion except that subpart four applies only to the "electronic printing, dissemination, disposal, sending, transmitting, communicating or distribution of material or information." [D.E. 23-3] 108 (emphasis added). It also does not cover collecting information. See id. The endorsement states that the "violation of consumer protection statutes" exclusion "modifies insurance provided." Id. Defendants contend this endorsement means the exclusion supersedes the near-identical "recording and distribution of material in violation of law" exclusion. See [D.E. 25] 17–18. Not so. The endorsement states regarding both Coverage A and Coverage B that "the following exclusion is added," not that it replaces or deletes anything else. Id. Thus, the two provisions must operate in tandem. One does not replace the other. See May, 2022 WL 1698639, at *6–7; Nagle, 2022 WL 628519, at *6–7.

Alternatively, even though the Garey plaintiffs did not specifically allege that defendants obtained, disclosed, or used their information electronically, the "violation of consumer protection statutes" exclusion also bars coverage. After all, the exclusion applies when an action "violates or is alleged to violate . . . [a]ny statute . . . that addresses, prohibits or limits the electronic printing

16

dissemination, disposal, sending, transmitting, communication or distribution of material." [D.E. 23-3] 108 (emphasis added). Notably, the exclusion does not say the alleged violation must match one of the enumerated actions. The DPPA is not limited to non-electronic efforts to obtain, disclose, or use information for a purpose the DPPA does not authorize. See 18 U.S.C. §§ 2721(b), 2722(a), 2725(1). Thus, the DPPA "addresses, prohibits, or limits" the actions listed in the exclusion, the Garey lawsuit alleges a violation of the DPPA, and the exclusion applies. See May, 2022 WL 1698639, at *6–7. This exclusion precludes coverage under both Coverage A and Coverage B.[6]

Nationwide does not have to defend Van Laningham and Bradley Law. Because the duty to defend is broader than the duty to indemnify, Nationwide also has no duty to indemnify Van Laningham and Bradley Law. See N.C. Farm Bureau Mut. Ins. Co. v. Phillips, 255 N.C. App. 758, 764, 805 S.E.2d 362, 366 (2017); Fieldcrest Cannon, Inc., 124 N.C. App. at 242, 477 S.E.2d at 66. Because Nationwide has no duty to defend or indemnify Van Laningham and Bradley Law, Nationwide did not breach its contract with them by denying coverage for the Garey suit.

IV.

In sum, the court grants plaintiffs' motion for summary judgment [D.E. 20]. Plaintiffs need not defend or indemnify defendants. Plaintiffs may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 18 day of July, 2022.

JAMES C. DEVER III
United States District Judge

---

[6] Because the court concludes that several exclusions bar coverage, the court need not also consider the parties' arguments concerning the "knowing violation of the rights of another" exclusion. The court also need not address the "access or disclosure of confidential or personal information and data-related liability" exclusion, which is only in the November 2014 to November 2016 policies.

17